UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEXA M.,

                          Plaintiff,

v.                                              5:22-CV-00243
                                                  (BKS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
 *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.            LUIS PERE, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

      Plaintiff Alexa M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1). This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, Chief United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18. Currently before this

court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 11). For the reasons set forth below, this court recommends that the District Court grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.   PROCEDURAL HISTORY

On July 9, 2019, Plaintiff protectively filed an application for DIB, alleging disability dating from June 27, 2019. (Administrative Transcript ("T.") 232-235). Her application was denied initially on July 21, 2020, and her request for administrative reconsideration was denied on January 5, 2021. (T. 112-151, 160-167). Plaintiff then requested a hearing, where she and vocational expert ("VE") Michael Smith testified on May 12, 2021 before Administrative Law Judge ("ALJ") Gretchen Mary Greisler. (T. 34-65). The ALJ issued an unfavorable decision on June 1, 2021. (T. 8-33). The Appeals Council denied Plaintiff's request for review on January 20, 2022. (T. 1-7).

Plaintiff commenced this proceeding on March 14, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1).

## II.   GENERALLY APPLICABLE LAW

### A.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

3

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.   FACTS

As of the date of the ALJ's decision, Plaintiff was 30 years old. (T. 39-40, 232). At her May 12, 2021 hearing, Plaintiff testified that she had an eight-year-old daughter who lived with her on a regular basis. (T. 40). Plaintiff was a high school graduate who had received special education assistance due to a traumatic brain injury ("TBI") suffered in a fall when she was thirteen years old. (T. 41, 498, 784). Her employment history included positions as a teacher's aide, casino dealer, home health aide, and waitress. (T. 41-44, 262, 272, 764).

Following her TBI, Plaintiff reported frequent headaches, mobility issues, difficulty maintaining attention and concentration, and problems with memory. (T. 498, 995-996). Plaintiff had received mental health treatment since she was a teenager for a number of diagnosed impairments including bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and substance abuse disorder. (T. 784). Her anxiety and other psychiatric symptoms were exacerbated after being violently assaulted in July 2019. (T. 1000). Plaintiff's mental health history includes several hospitalizations due to concerns of potential self-harm, with the most recent occurring during January and February 2020. (T. 784). At the time of the disability determination, Plaintiff attended biweekly counseling sessions and regular appointments for psychiatric medication management.  (T. 47-48, 406-27).

The record includes Plaintiff's treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV. THE ALJ'S DECISION

After finding that Plaintiff meets the insured status requirements through December 31, 2024, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the alleged onset date of June 27, 2019. (T. 13-14). At step two, the ALJ found that Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder and bipolar disorder." (T. 14).

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listings 11.02 (epilepsy), Listing 11.04 (vascular insult to the brain), Listing 11.18 (traumatic brain injuries), Listing 12.04 (Depressive, bipolar and related disorders), and Listing 12.11 (neurodevelopmental disorders). (T. 14-17). Next, the ALJ found that Plaintiff could physically perform the full range of work at all exertional levels but had certain non-exertional limitations. (T. 17-26). Specifically, the ALJ found that Plaintiff:

> retains the ability to perform routine tasks at a consistent pace, but not at a fast, production rate pace, such as would be experienced in assembly line type work. [Plaintiff] can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, and significant independent judgment, or intensive public interaction, defined as the type of interaction experienced in providing customer service. [Plaintiff] cannot work around crowds of people. [Plaintiff] can tolerate minor changes.

(T. 17-18).

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 18). The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. (*Id*.) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record." (T. 22).

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. (T. 26-27). Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 27-28). Accordingly, the ALJ found that Plaintiff was not disabled from her alleged onset date June 27, 2019 through the date of the ALJ's decision. (T. 28).

V.      **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical opinion evidence, particularly the October 1, 2020 opinion from treating Nurse Practitioner ("NP") Letitia McNally. (Dkt. No. 10-1 at 11-20). Plaintiff contends that this error resulted in an RFC determination that was not supported by substantial evidence. The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 11 at 4-16). For the following reasons, this court agrees with the Commissioner that the disability determination was supported by substantial evidence and recommends that the District Court grant Defendant's motion for judgment on the pleadings and deny Plaintiff's motion for judgment on the pleadings.

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must

also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions

---

[2] Plaintiff's application was protectively filed on July 8, 2019. (T. 229-235). Thus, the new regulations apply in this case.

are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.     The ALJ's Evaluation of NP McNally's opinion does not require remand.**

The ALJ evaluated a number of opinions from acceptable medical sources in reaching her RFC determination, deeming the June 22, 2020 opinion of state agency psychiatric consultant Dr. H. Ferrin, the March 5, 2020 mental health opinion of NP McNally, the July 13, 2020

opinion of consultative neurological examiner Dr. Elke Lorensen, the July 20, 2020 opinion of state agency medical consultant Dr. T. Schmidt-Deyoung, the January 4, 2021 opinion of state agency psychological consultant Dr. O. Fassler, and the January 5, 2021 opinion of state agency medical consultant Dr. J. Rosenthal to all be "persuasive." (T. 23-24). At the same time, the ALJ rejected the May 29, 2020 opinion of consultative psychiatric examiner Dr. Jeanne Shapiro that Plaintiff had no mental health limitations and the October 1, 2020 opinion of NP McNally that Plaintiff had significant mental health limitations, describing both as "non-persuasive." (*Id.*)

Plaintiff has not directly challenged the ALJ's evaluation of any of the "persuasive" opinions or the "non-persuasive" opinion of Dr. Shapiro. Rather, Plaintiff's claim centers on the ALJ's evaluation of NP McNally's October 2020 opinion. (T. 24, 1022-1025). In that opinion consisting of a check-box form with some accompanying narrative, NP McNally identified Plaintiff's mental health impairments as bipolar II disorder, ADHD, and generalized anxiety disorder, with symptoms including disturbed mood, difficulty thinking or concentrating, impulsive behavior, easy distractibility, emotional withdrawal, and recurrent panic attacks. (T. 1022). NP McNally opined that Plaintiff was "seriously limited, but not precluded" in a number of areas, including maintaining attention and concentration for two-hour segments, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruption from psychological symptoms, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (T. 1023). She further opined that Plaintiff was "limited but satisfactory" in a number of other areas, including remembering work-like procedures, understanding and remembering very short and simple instructions, maintaining regular attendance and punctuality, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest

11

periods, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and interacting appropriately with coworkers and the general public. (*Id.*)

In the accompanying narrative, NP McNally reported that she saw Plaintiff for medication management approximately every three months. (T. 1022, 1024). Other documentation in the record dates this treatment relationship back to at least 2015. (T. 777). NP McNally reported that Plaintiff had shown improved function on her current psychiatric medication, with decreased anxiety and increased focus and concentration. (T. 1024). Still, she opined that Plaintiff would experience repeated episodes of deterioration or decompensation in a workplace setting, and suffered deficiencies in concentration, persistence, and pace that would prevent her from completing tasks in a timely manner. (*Id.*) In NP McNally's opinion, Plaintiff's psychiatric impairments would likely cause her to be off task more than twenty percent of the typical workday and be absent from work about four days per month. (*Id.*) NP McNally opined that the described limitations dated back to at least September 2019. (T. 1025).

"At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-cv-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently

12

clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision points out, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id.*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

Plaintiff contends that the ALJ's analysis in this case did not adequately consider the consistency of NP McNally's October 2020 opinion and did not address supportability at all.[3] (Pl. Br. at 14). It is well-established that an ALJ may not generally assert that an opinion is "consistent with" or "supported by" the record, without further elaboration. *See, e.g., Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."); *Kathleen A. v. Comm'r of Soc. Sec. Admin*.,

---

[3] Plaintiff's specific contention is that an "ALJ's failure to apply the correct legal standards [regarding consistency and supportability] warrants reversal as a matter of law, regardless of whether the ALJ's conclusion is arguably supported by substantial evidence," but this argument relies upon cases decided prior to the Second Circuit's clarification in *Loucks*.

No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) ("[I]t is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision.").

To be sure, the ALJ provided some explanation for her evaluation of the persuasiveness of NP McNally's October 2020 opinion, identifying three reasons for rejecting it as unpersuasive: inconsistency with NP McNally's contemporaneous treatment notes, inconsistency with a September 24, 2020 mental status examination performed by Plaintiff's long-time therapist, and inconsistency with Plaintiff's contemporaneous description of her condition. (T. 24). In particular, the ALJ found no basis for NP McNally's opinion regarding potential absenteeism and time off task, in light of Plaintiff's testimony that her "bad days were unpredictable and random." (T. 24, 54-55).

However, this cursory evaluation lacks the breadth of analysis that the ALJ applied to any of the other medical opinions in this case. (T. 22-25). This disparity is best demonstrated by the ALJ's handling of NP McNally's earlier and less restrictive opinion from March 2020.[4] Before finding this less restrictive opinion to be persuasive, the ALJ considered Plaintiff's full treatment history, the full scope of NP McNally's notes, Plaintiff's hearing testimony and her description of her functional limitations to her treatment providers. (T. 24, 777-779).

At the time of this March 2020 opinion, NP McNally had treated Plaintiff for bipolar disorder and severe depression on a regular basis since 2015, with her most recent evaluation taking place in February 2020. (T. 777-778). This opinion was also issued shortly after Plaintiff recommenced outpatient therapy following her January 2020 psychiatric hospitalization. (T.

---

[4] Because Plaintiff's brief focuses on the procedural defect in the ALJ's evaluation of the opinion evidence as the basis for remand, it does not offer an explanation for the substantive disparity between NP McNally's March 2020 and October 2020 opinions.

14

778). Based on that treatment record, NP McNally opined that Plaintiff demonstrated a stable and upbeat mood, "good" attention and concentration and memory, and was able to maintain her ordinary activities of daily living, including care for her daughter, despite her history of panic attacks. (T. 777-778). In NP McNally's opinion, Plaintiff's mental health impairments interfered with her concentration and focus by causing her to be easily overwhelmed when overstimulated, and thus any work she could perform must be limited to "low intensity" tasks. (T. 778-779). The ALJ specifically included this particular limitation in Plaintiff's RFC by limiting Plaintiff to low pressure unskilled work. (T. 18, 23). NP McNally also opined that Plaintiff had "good" abilities with regard to social interaction, and no limitations with regard to responding appropriately to changes in the work setting and being aware of typical workplace hazards. (T. 779). These findings largely mirror the ALJ's RFC determination. (T. 18).

The ALJ took a similar approach when rejecting Dr. Shapiro's minimal restrictive consultative opinion as unpersuasive, by explicitly contrasting the consultative examiner's findings with the broader medical record, treatment notes from providers including NP McNally, and the opinions of non-examining consultants who reviewed the full medical record. (T. 23). In light of her narrower evaluation of NP McNally's October 2020 opinion, this court agrees with Plaintiff that the ALJ fell short of the regulatory requirements for assessing the persuasiveness of NP McNally's October 2020 opinion, as currently interpreted by the courts.

This court's analysis does not end there, however. Applying *Loucks*, this court recommends affirmance of the ALJ's determination, because a searching review of the record allows the court to glean the ALJ's rationale and find it supported by substantial evidence. Indeed, it is apparent from the ALJ's decision that she conducted her own "searching review" of the record before reaching any conclusions regarding the medical opinions and the overall record

15

evidence. *Caroline R. v. Comm'r of Soc. Sec.*, No. 5:21-CV-360 (GTS/ATB), 2022 WL 4494191, at *3-4 (N.D.N.Y. September 28, 2022) (relying on ALJ's detailed summary of plaintiff's treatment record to affirm disability determination under *Loucks*).

The ALJ's decision summarizes NP McNally's treatment notes dating back to November 2018, more than six months prior to the alleged onset date. (T. 20-26). The decision includes a synopsis of her outpatient treatment sessions and medication management as well as Plaintiff's counseling sessions with a mental health social worker. This review also included a lengthy discussion of NP McNally's own treatment notes, including documented general improvement in Plaintiff's psychiatric symptoms after she commenced regular treatment, and a typical favorable response to NP McNally's adjustment of the level and type of her psychiatric medication when her symptoms increased. (T. 20-24). In doing so, the ALJ recognized facts emphasized by Plaintiff as supportive of a disability claim, including the intense emotional distress that prompted Plaintiff to seek psychiatric hospitalization in January 2020 following several incidents of substance abuse and attempts at self-harm. (T. 434-504). The ALJ also considered post-hospitalization outpatient treatment notes reflecting sobriety, stable behavior and Plaintiff's self-assessment that she "was doing really well." (T. 22-23, 1019, 1160).

Relying on this longitudinal review of the record, the ALJ clearly articulated the reasons why she found NP McNally's March 2020 opinion to be persuasive, and explained why she adopted much of that opinion's limitations related to maintaining attention and concentration, persistence, and pace into her RFC determination. Pursuant to the regulations, the ALJ should have presented the same longitudinal analysis and clear explanation with respect to NP McNally's October 2020 opinion. Still, Plaintiff has not demonstrated, and this court's searching review has not found, any factual errors in the ALJ's summary of the record or any significant

deterioration in Plaintiff's condition between March 2020 and October 2020. Thus, the ALJ's more robust evaluation of NP McNally's March 2020 opinion redeems her deficient analysis of the October 2020 opinion from the same source, because it allows the court to glean the rationale that the ALJ relied upon to reach her RFC determination. This court therefore concludes that the substance of the regulation was not traversed and the ALJ's procedural error in not clearly articulating her consistency and supportability analysis for one medical opinion does not merit remand. *See Emily J.T. v. Kijakazi*, No. 5:22-CV-0084 (BKS), 2023 WL 2474790, at \*7-8 (N.D.N.Y. March 13, 2023) (finding that even if court could otherwise glean rationale for ALJ's evaluation of medical opinion evidence, factual errors in ALJ's recitation of the medical record required remand); *John L.M.,* No. 2022 WL 3500187, at \*3 (". . . reading the ALJ's decision as a whole, the Court can glean the ALJ's consideration of the consistency of Dr. Duckett's opinion from his analysis of the medical evidence showing benign physical examinations and his analysis of Dr. Ganesh's opinion."); *Ricky L*., 2022 WL 2306965, at \*4 ("[I]insofar as the Court can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, the Court finds the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.'").

   **C. The ALJ's Disability Determination is Supported by Substantial Evidence.**

  In light of the ALJ's detailed summary of Plaintiff's treatment history, this court finds no merit to Plaintiff's related contention that the ALJ's disability determination is based upon "cherry-picked" evidence. Although plaintiff's brief cites treatment records and testimony arguably supportive of a favorable disability determination, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id.* It is also the province of the ALJ to resolve genuine

17

conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by placing the greatest reliance on that evidence that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence and plaintiff's testimony and made an RFC determination that was consistent with the overall record. *See Matta*, 508 F. App'x. at 56 (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). As described above, that included an analysis of the records more suggestive of potentially greater functional limitations, including those related to her January 2020 hospitalization. (T. 21). Based upon the ALJ's analysis of the record and the supporting VE testimony, this court concludes that the ALJ's ultimate determination that Plaintiff could perform a number of jobs at all exertional levels is supported by substantial evidence. *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

**ACCORDINGLY**, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: May 2, 2023
Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge